IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDRA TARA MCCABE,<br><br>    *Plaintiff,*<br><br>    v.<br><br>SALLY ALBRIGHT *et al.*,<br><br>    *Defendants.* | Civil Action No. 1:21-cv-368-CKK |

## DEFENDANT'S INFORMAL SUMMARY OF DISCOVERY DISPUTE

    Defendant Sally Albright, by her undersigned counsel, submits Defendant's Informal Summary of Discovery Dispute. This dispute in this copyright case relates to two interrogatory responses set forth in full below. The first (Interrogatory No. 2) relates to a request for identification of Twitter accounts. The second (Interrogatory No. 5) relates to compensation received.

    The substance of Plaintiff's complaint is that Defendant and certain unnamed Doe defendants are liable for copyright infringement for, on the October 27, 2020 alleged date of publication, (1) reading portions of Plaintiff's book on a Facebook Live presentation on that same day and (2) providing a link for others to read the Plaintiff's book on that day. Defendant has generally denied the allegations, in part due to the First Amendment/fair use aspects of this case. Plaintiff's book offered what many have called spurious allegations of sexual harassment and rape on the eve of the 2020 Presidential election. Because the events relayed in the book are believed to be factually inaccurate, what amounts to a political book club critiqued and fact checked Plaintiff's book. From that critique, this suit arises.



RECEIVED
AUG 23 2022
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

As an initial matter, Plaintiff failed to meet and confer with specificity as to the relief being sought regarding Interrogatory No. 2 and did not lay out Plaintiff's position until this filing. With respect to Interrogatory No. 5, Plaintiff never brought the issue to the attention of Defendant or counsel or the Court and did not have a meet and confer regarding that issue. After the filing, Defendant and her counsel conferred and discussed the matters as outlined and provides this response. As such, most of these issues will be fully addressed below.

**INTERROGATORY NO. 2**:

Please identify each and every Twitter account by @ handle that you controlled at any point between the dates of October 1, 2020 and February 1, 2021.

**RESPONSE TO INTERROGATORY NO. 2**:

Defendant objects to Interrogatory No. 2 as beyond the scope of relevant discovery under Rule 26, FED R. C IV. P. The complaint contains no allegations concerning Twitter handles or the use of Twitter handles in any way regarding the copyright infringement issues in dispute. Defendant further objects that the Interrogatory is overbroad, burdensome, and calls for the production of information disproportionate to the needs of the case as pled by Plaintiff

**Plaintiff's Position**:[1]

Plaintiff knows that the defendant, Ms. Albright, has controlled many twitter accounts, and has used them to promote political causes. This has been covered in the Huffington Post: https://www.huffpost.com/entry/democratic-bot-network-sally-albright_n_5aa2f548e4b07047bec68023. An independent researcher published a quantitative analysis of Ms. Albright's twitter activity here: https://shareblueastroturf.netlify.app. Given that Ms. Albright promoted the copyright infringement complained of in this case on Twitter and Facebook, and that Ms.

---

[1] For ease of reference, Defendant has included the full argument from Plaintiff's paper and Defendant's position.

2

Albright has tweeted thousands of times about the plaintiff as alleged in the complaint, and has a well-documented history of using "sockpuppet" accounts to promote her pet causes, this request is well-tailored and likely to result in the discovery of information relevant to Plaintiff's claims. There are no legitimate privacy objections to this request, as twitter accounts are, by their nature, public. This request is not burdensome. If Ms. Albright only controlled a few twitter accounts, she could simply list them by hand. If its hundreds, or, as is likely, thousands, then whatever software she is using or has used to manage these accounts can export a list. Plaintiff is willing to work with the defendant to help them if they find this technically difficult.

**Defendant's Position**:

Plaintiff's interrogatory, which does not limit itself to the period from the publication of the "book" on the date alleged (October 27, 2020) is overbroad. The interrogatory does not seek the Twitter handle (the Twitter name displayed above the Tweet) related to the alleged copyright infringement or even ask for the Twitter handles used by Defendant for the alleged infringement. Thus, Plaintiff's argument misses the point that this is a case for copyright infringement, not a case regarding political causes, whether Defendant or others use (or don't use) "sock puppet" accounts on Twitter, or whether unnamed third party "researchers" offered analysis on social media regarding Defendant more than two years before the events at issue in this suit. This is also not a case about the paranoia of Plaintiff and whether her belief about the use of "sock puppet" accounts has anything to do with the alleged copyright infringement. *See, e.g., Lurensky v. Wellinghoff*, 271 F.R.D. 345, 350 (D.D.C. 2010) (discovery cannot be compelled on the "fantastic musings" of plaintiff). The complaint implicitly alleges that Defendant made available a link via Twitter under the Twitter handle "Silent Amuse." There is no allegation, much less a basis for an allegation, that any additional, "inauthentic" Twitter handles (or other social media posts) contained any such alleged link.

Rather, this is a classic fishing expedition. Rather than ask the right question, i.e., "did you make a link available through any other social media outlet?," or "did you have control of other Twitter

3

accounts in the period from the publication of the book (alleged to be October 27, 2020) to February 1, 2021 from which you provided a link to the book?", Plaintiff merely assumes that hundreds if not thousands of such accounts exist, and, therefore, they should have access to them. That is certainly not proportional to the needs of the case.

Moreover, Plaintiff offers the fanciful allegation that Defendant has posted thousands of comments about Plaintiff. By her complaint, Plaintiff alleged that a single Google search demonstrated more than 760 pages where the Plaintiff's alias and Defendant's name appeared on the same page. When counsel performed the search limiting the time scope to *before* the filing of the complaint in this action, exactly one hit appeared, hardly support for the misuse of Twitter or social media in general.

Discovery is directed to information in the control of the party that is relevant to any claim or defense and proportional to the needs of the case. Here, Plaintiff's blunderbuss demand for "each and every Twitter account", without any linkage to any event in this case, is overbroad. Nevertheless, Defendant will provide any Twitter handle or handle(s) she controlled in the period from the publication date (October 27, 2020) to February 1, 2021.

**INTERROGATORY NO. 5**:

If you were paid or otherwise compensated in any way for social media posts or other online activities between October 1, 2020 and February 1, 2021, please state the name of the person or organization who compensated you, and describe in your own words the agreement, if any, for your compensation. The existence of nonexistence of an NDA does not relieve you of your obligation to answer this question.

**RESPONSE TO INTERROGATORY NO. 5**:

Defendant objects to the request as outside the scope of discovery under Rule 26, FED R. CIV. P. Plaintiff's Interrogatory No. 5 seeks information that has no relevancy to the claims associated with the asserted unauthorized publication of Plaintiff's book.

Subject to the general and specific objections, Defendant had no agreement for and did not receive anything of value for social media related to the FB Live presentation in the period between October 1, 2020 and February 1, 2021.

**Plaintiff's Position**:

This answer is evasive and fails to answer the question propounded. As the links above demonstrate, Ms. Albright is more than likely a paid operative for a political organization. The plaintiff got on Ms. Albright's "radar" by making accusations of impropriety against a major political figure. If Ms. Albright is being compensated for social media activities or other online activities, the persons or organizations that are paying her are likely to have discoverable information regarding Ms. Albright's online activities, and may be liable directly as co-conspiritors, or indirectly through vicarious liability theories such as agency or *respondeat superior*.

There is one remaining dispute between the parties. Plaintiff wishes to subpoena the online service providers that the Defendant used to promote and disseminate Ms. Albright's book. Ms. Albright has necessitated this as she is denying having disseminated the book via online services, despite the very strong evidence that she has. *See, e.g.,* Compl. ¶ 31 (in which John Doe defendant @RealKHiveQueenB tweets that she got the book because "Sally Albright shared it"), Compl ¶ 28 (in which Ms. Albright states "We have the PDF if you want to join Facebook Live, somebody will mail the PDF to you, and you can either message me and I'll send it to you, or we'll find a way to get it to you, because I bought it so you don't have to.")

In order to prove her case, Plaintiff has requested that Ms. Albright sign a waiver permitting online services such as Twitter and Facebook where she promoted her piracy of the Plaintiff's book, and Google, which she used to disseminate the book, to release their stored communications of her online activities. This waiver is required under the Stored Communications Act, 18 U.S.C. § 2702.

Plaintiff is willing to discuss a protective order for non-pertinent communications received through subpoena or provided directly from the online services, or otherwise attempt to accommodate any privacy interest Ms. Albright may have, however, Ms. Albright has flatly refused to provide the waiver. Parties in lawsuits are routinely required to provide waivers for protected health information and other information that is at issue in a lawsuit. This waiver is absolutely critical to the Plaintiff's case. The Plaintiff will move to compel the waiver if the defendant does not agree to give it. Parties cannot be made to rely upon the honesty of other party's discovery responses when the information would be easily verifiable through a third-party request.

**Defendant's Position**:

Defendant's response is neither evasive nor does it fail to respond to the question of interest in this case. Defendant clearly stated *she received nothing of value* for social media related to the alleged copyright infringement surrounding the Facebook Live Presentation.

Plaintiff's attempt to create an issue where none exists speaks to the real purpose of this lawsuit – not to thrash out a copyright infringement claim, but to air dirty political laundry that apparently exists between Plaintiff and Defendant and to harass Defendant. For example, counsel suggests that Defendant is "more than likely a paid operative for a political organization." Defendant was not, and the allegation from counsel is pejorative at best. And even if she was, that has nothing to do with copyright infringement, and Plaintiff has made no case that there is such a link.

Defendant will be even more clear. She has not received anything of value from anyone for her presence on social media from the time the book was published, i.e., the earliest date of alleged copyright infringement, to February 1, 2021 (the end date in the interrogatory).

Plaintiff's desire to go fishing in Twitter's files is not well taken and should not be permitted. While Plaintiff suggests that many parties have been required to sign the necessary waivers to allow such searches, none are cited. The response above is clear and requires no further discovery of third parties, which is an obvious effort to harass. Defendant's counsel will be prepared to discuss this issue fully at the conference tomorrow.

Respectfully submitted,

Dated: August 23, 2022

*/s/ Philip L. Hirschhorn*
Philip L. Hirschhorn
PANITCH SCHWARZE BELISARIO & NADEL LLP
Two Commerce Square
2001 Market Street, Suite 2800
Philadelphia, PA 19103-7044
Tel: (215) 965-1330
Fax: (215) 965-1331
phirschhorn@panitchlaw.com

**Counsel for Defendant**