## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Alexandra Tara McCabe | ) |
| Michaela McCabe | ) |
| | ) |
| PLAINTIFF | ) Civil Action No. 21-cv-368 |
| vs. | ) |
| | ) |
| Sally Albright | ) **OPPOSITION TO MOTION FOR** |
| | ) **SANCTIONS** |
| DEFENDANTS | ) |
| | ) |

### REPLY TO DEFENDANT'S COMBINED RESPONSE

**This court does not lack subject matter jurisdiction over this case.**

Defendant cites no case holding that the court loses subject matter jurisdiction when, during litigation, a copyright holder transfers her rights to another person. The best defendant can do is a "see, e.g." cite to *Wheaton College v. Sibelius*, 887 F.Supp.2d 102, 106 n.6 (D.D.C. 2012). In *Wheaton*, the court held that the plaintiff lacked standing to sue the government when "the theoretical possibility of harm from future litigation does not, without more, confer standing."

Plaintiff Michaela McCabe would not have been eligible to make a motion for joinder until the rights were transferred to her. Plaintiff's Rule 25 motion to substitute was filed immediately upon transfer. Michaela McCabe has retained the same counsel so the transfer was seamless and without prejudice to anyone. If Defendant's argument were true, and a court loses subject matter jurisdiction upon a transfer of interest, it would send the administration of commerce and nationwide courts into chaos.

Defendant wrote "Defendant normally would not care whether or not Plaintiff decided to transfer ownership of her copyright assuming that it was done correctly and that proof of that transfer

was provided. Here, no transfer documents were provided to Defendant or the Court." Opp. at 8.

Plaintiff's counsel handled the transfer and attendant documentation. Plaintiff's counsel would be

happy to respond to a discovery request for said documentation. The fact that one was never made

demonstrates that this is a non-issue.[1]

Defendant cites to *Lans v. Gateway 2000 Inc.*, 84 F. Supp. 2d 112 (D.D.C. 1999) in support of

its opposition. Defendant fails to note that the plaintiff in that case did not hold the copyright when the

case was filed, and failed to disclose the assignment when asked during discovery, a fact that the court

found dispositive, as it meant that the court never had subject matter jurisdiction in the first place. *Lans*

notes that the courts should act in the interest of justice when it comes to substitutions, and cites Rule

17(a)(3).

> (3) Joinder of the Real Party in Interest. The court may not dismiss an action for failure to
> prosecute in the name of the real party in interest until, after an objection, a reasonable time
> has been allowed for the real party in interest to ratify, join, or be substituted into the action.
> After ratification, joinder, or substitution, the action proceeds as if it had been originally
> commenced by the real party in interest.

Fed. R. Civ P. 17(a),  Id. at 19.

Defendant's motion to dismiss, if granted, would directly violate Rule 17(a)(3), and common

sense.

**Defendant's other arguments are without merit**

Defendant continues: "But even if they had been presented, the significant issue is that the sole

purpose of the transfer is to avoid Plaintiff's deposition and default by fleeing the country." Defendant

insists that Plaintiff Alexandra Tara McCabe (hereafter Ms. Reade) is an important fact witness

because:

---

1   Plaintiff has not and does not intend to register the transfer with the copyright office at this time. Doing so is not a legal
    requirement. A copyright can be transferred, like other movable property, by simple written, or even oral, agreement.

She is not only the author of the supposedly copied text, but also the one who asserts that Defendant is having a Twitter war with her. Furthermore, she is the one who makes assertions in her book that were laid bare as false during Defendant's analysis of a chapter in which Plaintiff asserted sexual misconduct by the now-current President. All of this relates to Defendant's fair use defense.

These arguments should be examined one at a time.

### *"She is not only the author of the supposedly copied text"*

Ms. Reade is the author, but as Defendant already admitted, "Defendant normally would not care whether or not Plaintiff decided to transfer ownership of her copyright." The author is not a necessary party in a copyright action. Authors do not subject themselves to deposition by those who violate their copyrights; if they did, it is likely that no celebrity or politician would ever publish a book.

### *"but also the one who asserts that Defendant is having a Twitter war with her."*

Perhaps Defendant misunderstands why certain allegations are in the complaint. The complaint seeks statutory damages. 17 U.S.C. § 504(c)(2) states that if "infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." Plaintiff needs to prove willfulness, and Ms. Albright's actions demonstrate same. One could argue they also demonstrate an obsessive desire to cause harm. *See, e.g.*, Compl ¶ 18 ("Google identified 760 pages where the terms "Tara Reade" and "Sally Albright" both appear on the same page.") The court may, in its discretion, consider desire to cause harm, or "malice," when determining damages.

It should be made clear that the "Twitter war," if any, was one-sided. Defendant obsessively posted about Ms. Reade. The opposite has not been alleged.

Regardless, none of this suggests that Ms. Reade is required as a witness. Ms. Reade and Ms. Albright have never met, and have never spoken. The full extent of Plaintiff's evidence are public posts made by Ms. Albright. There have been no suggestions made that Ms. Reade authorized Ms. Albright's copyright violation, therefore the only behavior at question is that of the Defendant, Ms. Albright.

***Furthermore, she is the one who makes assertions in her book that were laid bare as false during Defendant's analysis of a chapter in which Plaintiff asserted sexual misconduct by the now-current President.***

And here we reach the center of the issue. Defendant Albright wants to take Ms. Reade's deposition so her counsel can have an opportunity to question statements in Ms. Reade's book. Ms. Reade has offered to testify in an appropriate forum about her interactions with then-Senator Biden in 1992, however, *she has made it clear that she will not testify about her sexual assault in this litigation, because this is a copyright case*. Defendant apparently wants to attack Ms. Reade's credibility, and she intends to probe into Ms. Reade's sexual assault in order to do so. If such an inquiry is allowed, then any time a sexual assault survivor asks the court for relief, the survivor must be willing to subject themselves to cross examination by a hostile lawyer about a traumatic event. This would turn a simple copyright case into a circus, for no benefit whatsoever.

Ms. Albright's attempt to improperly use the discovery process to probe into Ms. Reade's sexual assault – to be clear, a sexual assault accusation that had nothing whatsoever to do with Ms. Albright – is vile. Plaintiff respectfully requests that the court make it clear that inquiries into the sexual assault of Ms. Reade are inappropriate and out of bonds.

These improper motivations also explain why Ms. Albright reneged on her agreement to take a remote deposition. The undersigned has not taken a single in-person deposition since the pandemic. Remote depositions are tremendously more convenient for everyone. Given the parties and their lawyers were scattered across the country, and given that the evidence of Ms. Albright's malfeasance was exclusively her own online posts and online video so Ms. Reade's credibility or knowledge were not at issue, a remote deposition would save thousands of dollars and accomplish exactly the same goals as an in-person deposition. If given a chance, Plaintiff would have argued same in a motion for a protective order, should agreement not have been reached.

### *This case is not about an alleged copyright infringer making economic gains;*

Plaintiff does not allege that Ms. Albright was distributing the work for profit. Ms. Reade does not have any special knowledge as to why Ms. Albright did what she did. She can only draw conclusions from the same evidence that will be available to the court at trial: Ms. Albright's posts. Perhaps Ms. Albright did it out of malice. Perhaps she did it in order to raise her own online profile. Perhaps she did it because she thought it would make her look cool. Ms. Reade cannot testify as to why Ms. Albright did what she did.

### *instead, both parties posted content on social media about the other party.*

This is an odd assertion to make, given that Defendant has not produced in discovery any social media post by Ms. Reade about Ms. Albright, nor are Defendants willing to produce Ms. Albright's social media posts about Ms. Reade. Defendants made a "relevance" objection in response to a request for said social media posts. If those posts were irrelevant when Plaintiff

made her discovery requests, they are still irrelevant now.

### *Ms. Alexandra Tara McCabe's book is highly controversial and politically sensitive, the truthfulness of her story has been questioned in previous legal proceedings,*

Plaintiffs acknowledge that Ms. Reade's book caused controversy. Plaintiffs have no idea what "previous legal proceedings" Defendant is referring to, and none were cited.

### *and an affirmative defense relied on by Defendant is fair use.*

Plaintiff is proceeding on two theories. First, that Ms. Albright violated the copyright when she made a copy of the book, put it on Ms. Albright's Google drive, posted a link to Twitter allowing and encouraging as many people as possible to download the book for free, and writing that she would instant message a copy to anyone who asked. Second, Ms. Albright violated the copyright when she held a live reading of the book on Zoom and saved and broadcast it over Facebook. Large sections of the book were read aloud verbatim, on video. This video has been provided to Defendant.

There is obviously no Fair Use defense for simply making copies of the book and distributing them online. Defendant, therefore, must be arguing that the live reading was protected by Fair Use. However, Plaintiff's testimony is not relevant to the question of if the reading was Fair Use. Ms. Reade wasn't there when the recording was made. The court can simply watch the recording if there are any questions, and then the court will have more knowledge than Ms. Reade, who has never watched it. The court can then make a determination

as to the Fair Use factors. Ms. Reade's testimony is of no use here.

***All the above require Ms. Alexandra Tara McCabe, herself, to be deposed as a fact witness in this case.***

Through its entire motion, Defendant points to various issues, some of which are in controversy, others not, and then states in a conclusary fashion that "all of the above" require a deposition – presumably an in-person deposition – despite having never issued a Notice of Deposition. Ms. Reade has no more information about anything in this case than anyone who followed Ms. Albright's social media posts, and no new framing of the issues in this straightforward copyright case will change that basic fact.

## Discovery obligations are independent, not interdependent

Perhaps most frustratingly, even if everything Defendant wrote made sense, none of it would excuse Defendant's refusal to sit for several properly-noticed depositions. If parties could withold discovery without sanction if they claim a good-faith belief that the other party was failing in some other discovery violation, the Federal Courts would grind to an immediately and absolute halt.

## Conclusion

Defendant's refusal to cooperate in discovery was not substantially justified, so sanctions are mandated by Rule 37. Defendant's speculation-filled, kitchen-sink opposition demonstrates serious

disrespect to the parties and the Court. For the foregoing reasons, Plaintiff respectfully reiterates her request for sanctions, and respectfully states that defendant's opposition shows that the $5,000 plus attorney's fees requested in the motion is insufficiently severe, and therefore requests that the court use its discretion to increase them to a level appropriate to deter such behavior from this and other litigants.

Respectfully Submitted,


_____/s/_____
Daniel Hornal
DC Bar #1005381
Talos Law
615 E Chestnut St.
Bellingham, WA 98225
(202) 709-9662
daniel@taloslaw.com

Attorney for Plaintiffs